# *IN THE DISTRICT COURT OF THE UNITED STATES*

## *for the Western District of New York*

**MARCH 2025 GRAND JURY**
**(Impaneled 03/28/2025)**

**THE UNITED STATES OF AMERICA**

***-vs-***

**HASSIAN HUMPHREY,**
**(Counts 1-4)**
**JYLIN WOODS,**
**(Counts 1-2, 5)**
**BENJAMIN MARTIN**
**a/k/a Benji**
**a/k/a Ben10**
**a/k/a Gun Man**
**(Counts 1-2, 6)**
**KEISHAWN TURNER, and**
**(Count 1)**
**JERRY ANTONIO BAINE**
**a/k/a Bank 3x**
**(Count 1)**

**INDICTMENT**

**Violations:**
Title 18, United States Code, Sections 371, 922(a)(1)(A), 922(a)(5), 933(a)(1), and 2

(6 Counts and Forfeiture Allegations)

**<u>INTRODUCTION</u>**

**The Grand Jury Charges That:**

At all times relevant to this Indictment:

1. Defendants, **HASSIAN HUMPHREY** ("**HUMPHREY**"), **JYLIN WOODS** ("**WOODS**"), **KEISHAWN TURNER** ("**TURNER**"), and **JERRY ANTONIO BAINE a/k/a Bank 3x** ("**BAINE**"), resided in the State of North Carolina.

2. Defendant, **BENJAMIN MARTIN, a/k/a Benji, a/k/a Ben10, a/k/a Gun Man** ("**MARTIN**"), resided in the State of New York, within the Western District of New York.

3. Individual 1, a person known to the Grand Jury, resided in the State of New York, within the Western District of New York.

**COUNT 1**
**(Conspiracy to Commit Firearms Offenses)**

**The Grand Jury Charges That:**

4. The allegations of the Introduction are repeated and incorporated herein by reference.

5. Beginning on or about May 14, 2022, and continuing until on or about June 24, 2025, in the Western District of New York, and elsewhere, the defendants, **HASSIAN HUMPHREY**, **JYLIN WOODS**, **BENJAMIN MARTIN a/k/a Benji a/k/a Ben10 a/k/a Gun Man**, **KEISHAWN TURNER**, and **JERRY ANTONIO BAINE a/k/a Bank 3x**, did knowingly and willfully combine, conspire, and agree together and with others, known and unknown to the Grand Jury, to commit the following offenses against the United States, that is:

a. the defendants, not being licensed importers, manufacturers, dealers, and collectors of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms, in violation of Title 18, United States Code, Sections 922(a)(1)(A), 923(a), and 924(a)(1)(D); and

b. the defendants, not being licensed importers, manufacturers, dealers, and collectors of firearms, within the meaning of Chapter 44, Title 18, United States Code, did willfully transfer, sell, and deliver firearms to individuals who were not licensed importers, manufacturers, dealers, and collectors of firearms within the meaning of Chapter 44, Title 18, United States Code, including Individual 1, a person known to the Grand Jury, knowing and having reasonable cause to believe that the individuals, including Individual 1, were not then residing in the State of North Carolina, the state in which defendants **HUMPHREY**, **WOODS**, **TURNER**, and **BAINE** were residing at the time of the aforesaid transfers, sales, and deliveries of the firearms, in violation of Title 18, United States Code, Sections 922(a)(5) and 924(a)(1)(D).

## MANNER AND MEANS OF THE CONSPIRACY

6. It was part of the conspiracy that defendants **HUMPHREY**, **WOODS**, **MARTIN**, **TURNER**, and **BAINE** were not licensed importers, manufacturers, dealers, or collectors of firearms.

7. It was further part of the conspiracy that defendants **HUMPHREY**, **WOODS**, **TURNER**, and **BAINE** purchased firearms in states outside New York State, including North Carolina.

8. It was further part of the conspiracy that defendants **HUMPHREY**, **WOODS**, **MARTIN**, **TURNER**, and **BAINE** transferred, sold, and delivered firearms to individuals who lived outside North Carolina, the state where defendants **HUMPHREY**, **WOODS**, **TURNER**, and **BAINE** lived, including New York State, and conspired to do so.

9. It was further part of the conspiracy that the individuals to whom defendants **HUMPHREY**, **WOODS**, **MARTIN**, **TURNER**, and **BAINE** transferred, sold, and delivered firearms were not licensed importers, manufacturers, dealers, or collectors of firearms.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

10. In furtherance of the conspiracy and to affect the objects thereof, within the Western District of New York, and elsewhere, the defendants, **HUMPHREY**, **WOODS**, **MARTIN**, **TURNER**, **BAINE**, and others, known and unknown to the Grand Jury, committed, and caused to be committed, the following overt acts, among others:

a. On or about May 14, 2022, defendants **HUMPHREY** and **WOODS** drove from North Carolina en route to Buffalo, New York, while possessing and transporting firearms in their vehicle, including one (1) Glock, model 45, 9mm caliber handgun, bearing serial number BUVS518, and one (1) Polymer80, privately manufactured handgun, bearing no serial number. The vehicle was stopped by law enforcement in Oak Hill, West Virginia, and the two firearms were seized.

b. On or about October 7, 2022, defendant **WOODS** purchased one (1) firearm, namely, an Unbranded AR, model UAR-C, .223 caliber rifle, bearing serial number UT-03515, from Eagle Guns Inc., 3789 Roberta Church Rd., Concord, North Carolina 28027.

c. On or about March 25, 2023, defendant **BAINE** sent defendant **HUMPHREY** photographs of two (2) firearms via text message, including one (1) 1911-style handgun, with pearl grips; and one (1) Polymer80, privately manufactured handgun.

d. On or about April 21, 2023, defendant **BAINE** sent defendant **HUMPHREY** a photograph of two (2) firearms via text message, including one (1) Polymer80, privately manufactured handgun, equipped with an extended magazine, flashlight, and slide cuts; and one (1) handgun only partially visible in the photograph, equipped with a flashlight.

e. On or about April 22, 2023, defendant **BAINE** telephonically messaged defendant **HUMPHREY** stating, in sum and substance, that **BAINE** would sell **HUMPHREY** a Glock, model 20, handgun for $700. Defendant **HUMPHREY** telephonically replied, stating, in sum and substance, that **HUMPHREY** would purchase the Glock, model 20, handgun for $600.

f. On or about April 24, 2023, defendant **BAINE** sent defendant **HUMPHREY** a stock photograph of two (2) Fabrique Nationale (FN) handguns via text message. Defendant **HUMPHREY** telephonically replied and stated, in sum and substance, that **HUMPHREY** would purchase one (1) of the handguns.

g. On or about April 26, 2023, defendant **WOODS** sent defendant **HUMPHREY** a photograph of an AR-style pistol via text message. On or about April 29, 2023, defendant **WOODS** telephonically messaged defendant **HUMPHREY** asking, in sum and substance, for **HUMPHREY** to solicit a buyer for the AR-style firearm.

h. On or about April 29, 2023, **WOODS** sent the same photograph of the AR-style pistol referenced in subparagraph g to Individual 1 via text message, and asked Individual 1, in sum and substance, to solicit a buyer for the AR-style firearm. **WOODS** stated that if a buyer was found, he would "drive it up."

i. On or about May 5, 2023, defendant **BAINE** sent defendant **HUMPHREY** a photograph of a Polymer80, privately manufactured handgun, and stated "$600" via text message.

j. On or about June 15, 2023, defendant **HUMPHREY** telephonically messaged defendant **WOODS** and stated, in sum and substance, that **HUMPHREY** had found a potential buyer in Rochester, New York, for a firearm possessed by **WOODS**, and that the buyer would be willing to pay upwards of $1,000.

k. On or about June 16 and 17, 2023, defendant **HUMPHREY** telephonically messaged defendant **BAINE** and stated, in sum and substance, that there was an individual in Buffalo, New York, who would pay $1,000 for a Glock, model 26, handgun possessed by **BAINE**.

l. On or about June 18, 2023, defendant **BAINE** telephonically messaged defendant **HUMPHREY** and stated "imma sell it."

m. On or about July 7, 2023, defendant **HUMPHREY** purchased a Taurus G2C, 9mm handgun, bearing serial number AEB116019, at

Eagle Guns Inc., 3789 Roberta Church Rd. Concord, North Carolina 28027.

n. On or about July 8, 2023, defendant **WOODS** sent messages to Individual 1 indicating that defendant **WOODS** would be in Buffalo, New York. Defendant **WOODS** then sent a photo of a 1911-style handgun to Individual 1 telephonically, asking Individual 1, in sum and substance, to solicit a buyer for the firearm.

o. On or about July 9, 2023, defendant **WOODS** sent a photo of a Glock, model 17, handgun to Individual 1 telephonically asking, in sum and substance, for Individual 1 to solicit a buyer for the firearm.

p. On or about August 23, 2023, defendant **BAINE** sent defendant **HUMPHREY** a photograph of an AR-style pistol with an attached optic via text message, and stated, in sum and substance, that the firearm was chambered in .556 and fully automatic.

q. On or about September 19, 2023, defendant **BAINE** sent defendant **HUMPHREY** a video of a Glock, model 26, handgun, equipped with an extended magazine and flashlight via text message.

r. On or about September 26, 2023, defendant **TURNER** sent defendant **HUMPHREY** two (2) photographs of firearms via Instagram message. The first photograph was the same photograph that defendant **BAINE** had sent defendant **HUMPHREY** on or about April 21, 2023, that is, a photograph of a Polymer80, privately manufactured handgun, equipped with an extended magazine, flashlight, and slide cuts; and a second, only partially visible handgun. The second photograph was of another handgun, equipped with an extended magazine.

s. On or about October 3, 2023, defendant **HUMPHREY** telephonically messaged defendant **BAINE** asking, in sum and substance, to purchase a Glock, model 26, handgun. Defendant **BAINE** telephonically replied, stating, in sum and substance, that because the Glock, model 26, handgun would be going to New York, he would sell it for $850. Defendant **HUMPHREY** then telephonically messaged defendant **BAINE**, "He just said he got 850".

t. On or about October 4, 2023, defendant **HUMPHREY** sent a photograph of a Glock with a silver slide, to defendant **WOODS**, via text message.

u. On or about October 21, 2023, defendant **TURNER** sent a video of four (4) handguns to defendant **HUMPHREY** via Instagram message: one (1) Springfield Armory handgun, with an aftermarket tan grip, and

three (3) additional handguns all equipped with extended magazines. **TURNER** stated, in sum and substance, that he would sell **HUMPHREY** a privately made firearm, bearing no serial number, for "800".

v. On or about October 24, 2023, defendant **TURNER** sent a photograph of a Shadow Systems handgun to defendant **HUMPHREY** via Instagram message.

w. On or about October 28, 2023, defendants **HUMPHREY** and **TURNER** possessed, transported, and caused multiple firearms to be transported from North Carolina into the Western District of New York to be sold in the Western District of New York, including one (1) Springfield Armory handgun, with an aftermarket tan grip, and one (1) Shadow Systems handgun.

x. On or about November 9, 2023, defendant **WOODS** messaged Individual 1, asking, in sum and substance, if anyone "out there" was interested in purchasing firearms. Individual 1 replied, in sum and substance, that he himself and others he knew were looking to purchase firearms. Defendant **WOODS** then facilitated a meeting between defendant **HUMPHREY** and Individual 1 in order for Individual 1 to purchase the Shadow Systems handgun, mentioned in subparagraph v, from **HUMPHREY**.

y. On or about November 10, 2023, defendants **HUMPHREY** and **MARTIN** possessed and transported the Shadow Systems handgun, mentioned in subparagraph v, to a location in the Western District of New York.

z. On or about November 10, 2023, defendants **HUMPHREY** and **MARTIN** sold the Shadow Systems handgun, mentioned in subparagraph v, to Individual 1 at a location in the Western District of New York.

aa. On or about November 10, 2023, defendant **MARTIN** provided his telephone number to Individual 1 and stated that he could supply Individual 1 with more firearms.

bb. On or about November 12, 2023, defendant **WOODS** sent a video of a Glock, model 22, handgun to defendant **HUMPHREY** via text message.

cc. On or about November 12, 2023, defendants **HUMPHREY** and **MARTIN** discussed via telephonic messages, in sum and substance, the potential sale of one (1) privately manufactured firearm, and one

(1) revolver, and how they would split the profits from the sale between themselves and a third unnamed individual.

dd. On or about November 20, 2023, defendant **WOODS** sent two (2) photographs of the same Glock, model 22, handgun, to defendant **HUMPHREY** via text message.

ee. On or about December 8, 2023, defendant **BAINE** sent defendant **WOODS** two (2) photographs of a Staccato handgun, bearing serial number P2119979. Defendant **BAINE** also sent two (2) photographs of multiple firearms, including one (1) Glock, model 19x, handgun, equipped with a machine gun conversion device and extended magazine; one (1) Glock, model 19 handgun, also equipped with a machine gun conversion device and extended magazine; and one (1) AR-style pistol with a red trigger guard and selector switch.

ff. On or about December 9, 2023, defendant **HUMPHREY** sent defendant **WOODS** four (4) photographs of firearms via WhatsApp message, including: one (1) privately manufactured firearm, with slide cuts; one (1) revolver; one (1) Glock, model 48, handgun; and one (1) Canik handgun.

gg. On or about December 10, 2023, defendant **HUMPHREY** and defendant **MARTIN** discussed via telephonic messages, in sum and substance, how they would share the profits for the sale of firearms, totaling approximately $4,000.00.

hh. On or about December 10, 2023, defendant **MARTIN** contacted Individual 1 via text message and stated, in sum and substance, that he would sell Individual 1 a privately manufactured firearm, and/or a revolver. Individual 1 responded in sum and substance that Individual 1 would purchase the privately made firearm for $620; that Individual 1 and defendant **WOODS** would meet defendant **MARTIN** to conduct the purchase; and that Individual 1 would purchase the revolver at a later date.

ii. On or about December 10, 2023, defendant **MARTIN** telephonically messaged defendant **HUMPHREY**, stating that he had located a potential buyer for a privately made firearm who was willing to pay "6" for it, and that the potential buyer and defendant **WOODS** would meet defendant **MARTIN** to conduct the purchase.

jj. On or about December 10, 2023, defendant **MARTIN** sold Individual 1 a privately manufactured firearm at a location in the Western District of New York.

kk. Between on or about December 10, 2023, and on or about December 20, 2023, the exact date being unknown to the Grand Jury, defendant **MARTIN** sold Individual 1 a revolver at a location in the Western District of New York.

ll. Prior to defendant **MARTIN's** sale of the privately manufactured firearm and revolver to Individual 1, mentioned in subparagraphs jj and kk, respectively, defendant **HUMPHREY** transferred the firearms to **MARTIN**.

mm. On or about December 10, 2023, defendant **BAINE** sent a stock photograph of a Staccato handgun to defendant **HUMPHREY**, and asked **HUMPHREY**, in sum and substance, to solicit a buyer for the firearm "out there." **BAINE** indicated he would accept $850 for the firearm. Defendant **BAINE** then sent defendant **HUMPHREY** a photograph of three (3) firearms, including one (1) Glock handgun, equipped with an extended magazine; one (1) Glock, model 19x, handgun; and one (1) Staccato handgun, equipped with an optic.

nn. On or about December 12, 2023, defendant **BAINE** telephonically messaged defendant **HUMPHREY**, stating, in sum and substance, that **BAINE** was reducing the price of the Staccato handgun to $650.

oo. On or about December 14, 2023, defendant **BAINE** telephonically messaged defendant **HUMPHREY**, stating, in sum and substance, that **BAINE** was reducing the price of the Staccato handgun to $550.

pp. On or about December 15, 2023, defendant **MARTIN** asked defendant **HUMPHREY** in sum and substance via telephonic messages, how much defendant **HUMPHREY** intended to sell an unspecified firearm for, to which defendant **HUMPHREY** replied, "6".

qq. On or about April 19, 2024, defendant **BAINE** purchased one (1) Combat Armory, 9mm handgun, bearing serial number 99011085, from Blackstone Shooting Sports, 2001 Wilkinson Blvd., Charlotte, North Carolina 28208.

rr. Between April 19, 2024, and July 4, 2024, defendant **BAINE** transferred one (1) Combat Armory, 9mm handgun, bearing serial number 99011085, mentioned in subparagraph qq, to defendant **HUMPHREY**.

ss. Prior to October 4, 2024, defendant **BAINE** transferred one (1) PSA Dagger handgun to defendant **HUMPHREY**.

tt. On or about June 23, 2025, defendant **BAINE** purchased two (2) Bear Creek Arsenal, model BCA15, multicaliber pistols, bearing serial numbers A124317 and A124331, from Watchdog Tactical, 10430-H Harris Oaks Blvd., Charlotte, North Carolina 28269.

uu. On or about June 24, 2025, defendant **WOODS** purchased one (1) Glock, model 22, .40 caliber handgun, bearing serial number AHGU816, and one (1) Glock, model 19, 9mm caliber handgun, bearing serial number BUYE567, from Jewelry & Loan, 805-807 S. Main St., Kannapolis, North Carolina, 28081.

**All in violation of Title 18, United States Code, Section 371.**

## <u>COUNT 2</u>
## (Transferring a Firearm to an Out of State Resident)

**The Grand Jury Further Charges That:**

11. The allegations of the Introduction are repeated and incorporated herein by reference.

12. On or about November 10, 2023, in the Western District of New York, and elsewhere, defendants **HASSIAN HUMPHREY**, **JYLIN WOODS**, and **BENJAMIN MARTIN, a/k/a Benji, a/k/a Ben10, a/k/a Gun Man**, not being licensed importers, manufacturers, dealers, and collectors of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully transfer, sell, and deliver a firearm, to wit: a Shadow Systems XR920, 9mm handgun bearing serial number SSX023103, to Individual 1, a person known to the Grand Jury, such individual not being a licensed importer, manufacturer, dealer, and collector of firearms within the meaning of Chapter 44, Title 18, United States Code, knowing and having reasonable cause to believe that Individual 1 was not then residing in the State of

North Carolina, the state in which defendants **HUMPHREY** and **WOODS** were residing at the time of the aforesaid transfer, sale, and delivery of the firearm.

**All in violation of Title 18, United States Code, Sections 922(a)(5), 924(a)(1)(D), and 2.**

**COUNT 3**
**(Trafficking of a Firearm)**

**The Grand Jury Further Charges That:**

13. The allegations of the Introduction are repeated and incorporated herein by reference.

14. On or about November 10, 2023, in the Western District of New York, and elsewhere, defendant **HASSIAN HUMPHREY** did ship, transport, transfer, cause to be transported, and otherwise dispose of a firearm, to wit: a Shadow Systems XR920, 9mm handgun bearing serial number SSX023103, to Individual 1, a person known to the Grand Jury, in and otherwise affecting interstate and foreign commerce, knowing and having reasonable cause to believe that the use, carrying, and possession of the firearm by Individual 1 would constitute a felony.

**All in violation of Title 18, United States Code, Section 933(a)(1).**

**COUNT 4**
**(Engaging in Firearms Business Without a License)**

**The Grand Jury Further Charges That:**

15. The allegations of the Introduction are repeated and incorporated herein by reference.

16. Beginning on or about May 14, 2022, and continuing until on or about October 4, 2024, in the Western District of New York, and elsewhere, defendant **HASSIAN HUMPHREY,** not being a licensed importer, manufacturer, dealer, and collector of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms.

**All in violation of Title 18, United States Code, Sections 922(a)(1)(A), 923(a), and 924(a)(1)(D).**

**COUNT 5**

**(Engaging in Firearms Business Without a License)**

**The Grand Jury Further Charges That:**

17. The allegations of the Introduction are repeated and incorporated herein by reference.

18. Beginning on or about October 14, 2022, and continuing until on or about June 24, 2025, in the Western District of New York, and elsewhere, defendant **JYLIN WOODS**, not being a licensed importer, manufacturer, dealer, and collector of firearms within the

meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms.

**All in violation of Title 18, United States Code, Sections 922(a)(1)(A), 923(a), and 924(a)(1)(D).**

**COUNT 6**
**(Engaging in the Firearms Business Without a License)**

**The Grand Jury Further Charges That:**

19. The allegations of the Introduction are repeated and incorporated herein by reference.

20. Beginning in or about November 10, 2023, and continuing until on or about December 10, 2023, the exact date being unknown to the Grand Jury, in the Western District of New York, defendant **BENJAMIN MARTIN, a/k/a Benji, a/k/a Ben10, a/k/a Gun Man**, not being a licensed importer, manufacturer, dealer, and collector of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms.

**All in violation of Title 18, United States Code, Sections 922(a)(1)(A), 923(a), and 924(a)(1)(D).**

## FIRST FORFEITURE ALLEGATION

**The Grand Jury Alleges That:**

Upon conviction of Count 2 and/or Counts 4 through 6 of this Indictment, defendants **HASSIAN HUMPHREY**, **JYLIN WOODS**, and **BENJAMIN MARTIN, a/k/a Benji, a/k/a Ben10, a/k/a Gun Man**, shall forfeit to the United States all their right, title and interest in any firearm and ammunition involved or used in the commission of the offenses, or found in the possession or under the immediate control of the defendants.

**All pursuant to Title 18, United States Code, Sections 924(d)(1) and 3665, and Title 28, United States Code, Section 2461(c).**

## SECOND FORFEITURE ALLEGATION

**The Grand Jury Further Alleges That:**

Upon conviction of Count 3, defendant **HASSIAN HUMPHREY** shall forfeit to the United States all his right, title, and interest in any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of said violation, any personal property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of said violation, and any firearm or ammunition involved in or used in said violation.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence,

b. has been transferred or sold to, or deposited with, a third person,

c. has been placed beyond the jurisdiction of the Court,

d. has been substantially diminished in value, or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

**All pursuant to Title 18, United States Code, Sections 924(d)(1) and 934(a)(1), Title 21, United States Code, Section 853(p), and Title, 28, United States Code, Section 2461(c).**

DATED: Buffalo, New York, December 4, 2025.

MICHAEL DIGIACOMO
United States Attorney

BY: S/LOUIS A. TESTANI
LOUIS A. TESTANI
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716/843-5894
Louis.Testani@usdoj.gov

A TRUE BILL:

S/FOREPERSON
FOREPERSON